```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
AMERICAN GENERAL LIFE INSURANCE            :
COMPANY,                                   :
                                           :
                     Plaintiff,            :      MEMORANDUM AND ORDER
                                           :      11-CV-5797 (DLI)(RER)
              -against-                    :
                                           :
PLATINUM ELITE GROUP, INC.,                :
                                           :
                     Defendant.            :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

American General Life Insurance Company ("Plaintiff" or "AGL") commenced this breach of contract action against Platinum Elite Group, Inc. ("Defendant" or "Platinum") seeking to recover commissions and other fees paid to Platinum in connection with the sale of life insurance policies. (Compl., Doc. Entry No. 1.) Platinum asserted counterclaims, seeking to recover commissions that AGL has withheld since the dispute arose. (Ans., Doc. Entry No. 4.) Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to its claims and Defendant's counterclaims. (Pl.'s Mem., Doc. Entry No. 27-2.) Defendant opposes. (Rosengarten Decl., Doc. Entry No. 28-2.) For the reasons set forth below, Plaintiff's motion for summary judgment is granted in its entirety.

## BACKGROUND

AGL is a life insurance company, and Platinum was one of its general agents. (Pl.'s 56.1 Stmnt ¶¶ 2, 4; Def.'s 56.1 Stmnt ¶¶ 2, 4.) As a general agent, Platinum would "procure and submit to [AGL] applications for all types of insurance and annuities." (Pl.'s 56.1 Stmnt ¶ 4; Def.'s 56.1 Stmnt ¶ 4.) When AGL collected premiums under insurance policies issued on applications submitted by Platinum, AGL paid Platinum commissions. (Pl.'s 56.1 Stmnt ¶ 5;

Def.'s 56.1 Stmnt ¶ 5.)

Although it is undisputed that Platinum was a general agent for AGL, the parties disagree about whether a valid contract governed the parties' relationship at the times relevant to this lawsuit. (Pl.'s 56.1 Stmnt ¶ 4; Def.'s 56.1 Stmnt ¶ 4.) Defendant disputes the validity of a general agent contract provided by AGL as evidence in this case (the "Contract") claiming that it: (1) was never executed by Plaintiff; (2) fails to identify the signatories to the Contract; and (3) is undated. (Def.'s 56.1 Stmnt ¶¶ 6, 34-41; see Fishkin Decl., Ex. C, Doc. Entry No. 27-3.)

The Contract at issue provides, in relevant part, that "[i]f [AGL] shall . . . return the premium on any policy, the General Agent agrees to repay [AGL] on demand any compensation received by the General Agent on premium so returned." (Pl.'s 56.1 Stmnt ¶¶ 6, 7; Fishkin Decl., Ex. C ¶ 4.b.) The Contract also states that Platinum is liable "for any and all expense[s]" that AGL incurs to "pursue collection procedures in order to collect any indebtedness." (Pl.'s 56.1 Stmnt ¶ 8; Fishkin Decl., Ex. C ¶ 4.h.) Although, as noted above, Platinum argues that the Contract is invalid because it lacks certain material terms, Platinum does not contend that these provisions should not be interpreted consistently with their plain meaning or that they are otherwise unenforceable. (*See* Def.'s 56.1 Stmnt; Rosengarten Decl.)

In August 2007 and December 2007, Platinum submitted to AGL applications for life insurance policies on behalf of Rachel Kalish (the "Kalish Applications"). (Pl.'s 56.1 Stmnt ¶ 9; Def.'s 56.1 Stmnt ¶ 9.) AGL issued the policies to the Kalish family (the "Kalish Policies"), and, as a result, AGL received $441,000.000 in premiums and paid Platinum $397,980.02 in commissions. (Pl.'s 56.1 Stmnt ¶¶ 10, 11; Def.'s 56.1 Stmnt ¶¶ 10, 11.) Subsequently, AGL discovered "material misrepresentations in the Kalish Applications," filed a lawsuit seeking to declare the Kalish Policies void *ab initio*, and returned $197,775.00 in premiums pursuant to a

settlement agreement. (Pl.'s 56.1 Stmnt ¶¶ 12-14; Def.'s 56.1 Stmnt ¶¶ 12-14.) After AGL returned the portion of the premiums paid on the Kalish Policies, it demanded that Platinum repay the commissions it had received from AGL on those premiums. (Pl.'s 56.1 Stmnt ¶ 15; Def.'s 56.1 Stmnt ¶ 15.)

Similarly, in March 2008 and April 2008, Platinum submitted to AGL applications for a life insurance policy on behalf of Lizzi Berger (the "Berger Applications"). (Pl.'s 56.1 Stmnt ¶ 17; Def.'s 56.1 Stmnt ¶ 17.) AGL issued one policy to the Berger family (the "Berger Policy") for which AGL received $877,500.00 in premiums and Platinum received $245,072.23 in commissions. (Pl.'s 56.1 Stmnt ¶¶ 18-19; Def.'s 56.1 Stmnt ¶¶ 18-19.) As with the Kalish Applications, AGL discovered material misrepresentations in the Berger Applications and sought to have the Berger Policy declared void *ab initio*. (Pl.'s 56.1 Stmnt ¶¶ 20-21; Def.'s 56.1 Stmnt ¶¶ 20-21.) AGL returned $438,750.00 that had been paid as premiums on the Berger Policy and demanded that Platinum return the commissions received on those premiums. (Pl.'s 56.1 Stmnt ¶¶ 22-23; Def.'s 56.1 Stmnt ¶¶ 22-23.)

It is undisputed that Platinum has not repaid commissions received on the premiums returned by AGL for either the Kalish or Berger Policies. (Pl.'s 56.1 Stmnt ¶¶ 16, 24; Def.'s 56.1 Stmnt ¶¶ 16, 24.) AGL claims that, pursuant to the Contract, Platinum owes commissions in the amount of $277,291.15. (Pl.'s 56.1 Stmnt ¶ 27.) As of January 25, 2013, AGL had withheld $102,952.15 from Platinum for commissions otherwise owing to Platinum in order to offset the commissions Platinum has allegedly failed to repay. (Pl.'s 56.1 Stmnt ¶ 16; Def.'s 56.1 Stmnt ¶ 16.) Thus, AGL claims that it is owed the difference between the amount of commissions owed and the commissions withheld, which equals $174,339.00, as well as the costs of collecting the commissions. (Pl.'s 56.1 Stmnt ¶¶ 29, 30.) Platinum claims that the

3

Contract was not in effect when the Kalish and Berger Policies were issued, and seeks recovery of the commissions withheld by AGL. (Pl.'s 56.1 Stmnt ¶ 31, 41; Def.'s 561. Stmnt ¶ 31, 41.)

## DISCUSSION

I. **Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

**II. Application**

The sole issue before this Court is whether a rational trier of fact could find that the Contract was not in effect when Platinum submitted the Kalish and Berger Applications to AGL.[1] In support of its motion for summary judgment, Plaintiff relies primarily on the Contract itself, the deposition testimony of Platinum's owner, Jechouda Einhorn ("Einhorn"), and the

---

[1] As an initial matter, there does not appear to be a choice of law issue here because Plaintiff discusses New York law in its briefs and Defendant does not contest Plaintiff's reliance on New York law. (*See* Pl.'s Mem., Doc. Entry No. 27-2; Rosengarten Decl.; Pl.'s Reply, Doc. Entry No. 29.) Notably, the Contract appears to have been entered into in New York. (Fishkin Decl., Ex. C.) Thus, the Court will apply New York law.

5

Declaration of Jay Lohman ("Lohman"), Vice President of Licensing and Compensation for AGL. (*See* Pl.'s 56.1 Stmnt.) In opposing Plaintiff's motion, Defendant relies almost solely on the Contract. (*See* Def.'s 56.1 Stmnt.) Specifically, Defendant argues that the Contract was not in effect at the relevant times because it: (1) was not signed by either Plaintiff or Defendant; (2) fails to identify the signatories to the Contract; and (3) is undated. (Def.'s 56.1 Stmnt ¶¶ 6, 34-41.) For the reasons set forth below, Defendant has failed to come forward with specific facts showing that there is a genuine issue of material fact for trial.

### A. Execution of the Contract by AGL

First, Defendant claims that the Contract is unenforceable, because it is not signed by an agent for the Plaintiff. (Def.'s 56.1 Stmnt ¶ 36.) Under New York's statute of frauds, certain types of agreements are void if they are not in writing and signed by the party to be charged or by the party's agent.[2] N.Y. Gen. Oblig. Law § 5-701. *See DeRosis v. Kaufman*, 219 A.D.2d 376, 380 (1st Dep't 1996) (finding that the statute is generally satisfied "by some note or memorandum signed by the party to be charged that is adequate to establish an agreement when considered in light of the admitted facts and surrounding circumstances"). Here, Platinum is the party to be charged, because AGL seeks to enforce the Contract. Thus, it is irrelevant whether AGL's signature appears on the Contract, and AGL's failure to sign the contract does not establish a genuine issue of material fact for trial.

### B. Execution of the Contract by Platinum

Defendant's claim that there is no evidence as to whether the Contract was signed by Defendant (Def.'s 56.1 Stmnt ¶ 40), is contradicted by the record evidence. The Contract bears three signatures. (*See* Fishkin Decl., Ex. C.) Above a line labeled "NAME OF GENERAL

---

[2] The parties do not squarely address the question whether the statute of frauds applies to the agreement at issue here. The Court assumes that the statute of frauds applies.

AGENT" is written "Platinum Elite Group." (*Id.*) On the next line down, which is labeled "GENERAL AGENT," there is an illegible signature. Below that is a line labeled "WITNESS TO GENERAL AGENT" and another illegible signature. Mr. Einhorn testified that he signed the Contract on the line marked "GENERAL AGENT." (Fishkin Decl., Ex. B at 28.) Defendant has not come forward with specific facts or pointed to any evidence that might show that the Contract was not, in fact, signed by an agent of Platinum. Thus, the uncontroverted evidence shows that Platinum signed the Contract through its agent.

### C. Identification of Signatories to the Contract

Defendant claims that the Contract "fails to identify the parties to the alleged agreement." (Def.'s 56.1 Stmnt ¶¶ 34, 35.) This contention is also belied by the evidence. First, as noted above, Platinum Elite Group is listed as the general agent on the Contract, and the Contract was signed by Platinum through its agent, Mr. Einhorn. (Fishkin Decl., Exs. B, C.) Defendant has not presented any case law or evidence showing a genuine issue of fact as to whether Platinum is sufficiently identified as a party to the Contract. Next, the Contract's heading names the United States Life Insurance Company as a party to the Contract. Mr. Einhorn testified that he understood that "the company name 'American General' . . . includes United States Life Insurance Company." (Fishkin Decl., Ex. B at 13.) Thus, there is no genuine issue of material fact for trial as to whether the Contract sufficiently identifies both parties to the agreement.

### D. Date of the Contract

Finally, Defendant contends that, even if this Court finds that the Contract is otherwise enforceable, "there is no evidence that [D]efendant agreed to be bound by such terms *prior* to the Berger and Kalish [Policies] having been issued." (Def.'s 56.1 Stmnt ¶¶ 37, 39, 41.) Defendant cites only the absence of a date on the Contract in support of its position. In contrast, Plaintiff

points to several pieces of credible evidence showing that the Contract was signed several years before the Kalish and Berger Policies were issued.

First, Plaintiff cites Mr. Einhorn's testimony that Platinum became a general agent for AGL in either 2003 or 2004. (Fiskin Decl., Ex. B at 14.) Second, Plaintiff submits a welcome letter (the "Letter") from AGL's Regional Vice President, Ronald Rovner ("Rovner"), to Mr. Einhorn. The Letter welcomes Mr. Einhorn to the United States Life Insurance Company and invites him to call Mr. Rovner's office with any questions about "your General Agent Contract." (Fishkin Decl., Ex. D.) Plaintiff points to an internal notation indicating that the Letter was written on January 9, 2004. (*Id.*) Third, Plaintiff cites the declaration of AGL's Vice President of Licensing and Compensation, Mr. Lohman, which states that Platinum became a general agent for AGL under the Contract in approximately January 2004. (Lohman Decl. ¶¶ 1, 3.) Thus, the uncontroverted evidence shows that Platinum signed the Contract and became a general agent for AGL in late 2003 or early 2004, several years before Platinum submitted the Kalish and Berger Applications.

In sum, taking the record as a whole, and drawing all inferences in the light most favorable to the non-moving party, Defendant has failed to raise any genuine issue of material fact that might cause a rational trier of fact to find in its favor. Accordingly, Plaintiff's motion for summary judgment is granted, and Defendant's counterclaims are dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is granted in its entirety and Defendant's counterclaims are dismissed with prejudice. Plaintiff is directed to submit an accounting of the costs it has incurred in collecting the commissions owed by Platinum on or before April 17, 2014. Final judgment will be entered by the Clerk of the Court thereafter.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge